**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| Allstate Insurance Company,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>Charles Birt and Courtany Houser,<br><br>　　　　　　　Defendant. | Case No. 2:24-cv-07033-DCN<br><br>**(Jury Trial Demanded)** |

**PLAINTIFF ALLSTATE INSURANCE COMPANY'S COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES**

Plaintiff Allstate Insurance Company ("Allstate"), by and through its undersigned attorneys, alleges as follows for its Complaint against Defendants Charles Birt ("Birt") and Courtany Houser ("Houser"):

**NATURE OF THE ACTION**

1.　　This action is the result of Defendants Birt and Houser failing to comply with certain promises they made and obligations they owe Allstate. Specifically, Birt executed an "Allstate R3001C Exclusive Agency Agreement" ("Birt Agreement") with Allstate on March 1, 2021 (attached as Exhibit A). Houser executed an Allstate "Confidentiality and Non-Competition Agreement" ("Houser Agreement") with Allstate on January 20, 2021 (attached as Exhibit B). The Agreements allowed Birt and Houser to market and sell Allstate products and services (jointly, "products"), to receive Allstate Confidential Information (defined below), and to receive compensation for the sale of Allstate products.

2.　　Under their Agreements, Birt and Houser agreed that, for one year following the termination of their relationships with Allstate, they would not solicit the purchase of products in competition with those sold by Allstate: a) with respect to any Allstate customer known by Birt or

1

Houser through their status as an Allstate Exclusive Agent and/or Licensed Service Provider, b) to any Allstate customer known by Birt or Houser as a result of their access to Allstate Confidential Information, and c) from any office or business site located within one mile of Birt's Exclusive Allstate Agency ("Allstate Agency") location.

3.     The Agreements further required Birt and Houser to acknowledge that they would be granted access to Allstate Confidential Information, that Allstate Confidential Information is the property of Allstate, and that they would not disclose Allstate Confidential Information to any third party or permit any third party to access Allstate Confidential Information. Birt and Houser also agreed to return all Allstate property, including Allstate Confidential Information, upon termination of their relationship with Allstate.

4.     Effective January 13, 2024, Birt's Agreement and his relationship with Allstate terminated. Houser's Agreement and her relationship with Allstate terminated on January 31, 2024.

5.     Allstate recently learned that Birt and Houser are working for a competing insurance agency located in the same location as Birt's former Allstate Agency. In doing so, Birt and Houser are selling products that compete with Allstate out of their former Allstate Agency location. Birt and Houser can also encourage Allstate customers who visit the former Allstate Agency location to terminate their relationship with Allstate and purchase competing insurance products from their former Allstate Agency location. Birt and Houser can also use Allstate Confidential Information in their possession to encourage Allstate customers who visit their former Allstate Agency location to leave Allstate and purchase products that compete with Allstate from their former Allstate Agency location.

6.      Birt's and Houser's actions are a clear violation of their Agreements and the law. Consequently, Allstate now brings suit against Birt and Houser for breaches of their Agreements, and misappropriation of Allstate trade secrets.  In doing so, Allstate requests that this Court enter an order enjoining Birt and Houser from continuing their knowing and intentional breaches of their Agreements, and award Allstate damages and attorneys' fees for Birt's and Houser's unlawful acts.

7.      More specifically, Allstate requests that this Court enter an order (1) enjoining Birt and Houser, and anyone acting in concert with them, from soliciting the purchase of insurance products competitive to those offered by Allstate from within one mile of the Allstate Agency location, (2) compelling Birt and Houser to return all Allstate property, including all Allstate Confidential Information, in their custody, possession or control to Allstate, (3) enjoining Birt and Houser, and anyone acting in concert with them, from using, possessing, or accessing Allstate Confidential Information, (4) awarding Allstate compensatory and punitive damages for Birt's and Houser's intentional acts, and (5) awarding Allstate its reasonable attorneys' fees as provided for under the Agreement and the law.

## THE PARTIES AND RELEVANT PERSONS

8.      Allstate Insurance Company ("Allstate") is an Illinois corporation with its principal place of business located in Northbrook, Illinois.

9.      Charles Birt ("Birt") is a citizen of the State of South Carolina and resides at 2873 Rutherford Way in Charleston, South Carolina.

10.     Courtany Houser ("Houser") is a citizen of the State of South Carolina and resides at 8242 Savannah Highway in Adams Run, South Carolina.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this dispute, pursuant to 28 U.S.C. § 1331, because Allstate's claims against Birt and Houser under the Federal Defend Trade Secrets Act, 18 U.S.C. § 1833, *et seq.*, raise a Federal question.  Allstate's remaining claims fall within the Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, because the claims are so related to the Federal question that they form part of the same case or controversy.

12.     Alternatively, the Court has diversity jurisdiction under 28 U.S.C. § 1332(a) because this action and controversy is between citizens of different states and exceeds the sum or value of $75,000.00, exclusive of interest and costs.

13.     This Court has personal jurisdiction over Birt and Houser because they are citizens and residents of South Carolina.  Venue is proper in the United States District Court for the District of South Carolina, pursuant to 28 U.S.C. § 1391(b), because Birt and Houser reside in this District, a substantial part of the events giving rise to Allstate's claims occurred in this District, and the property Allstate seeks to be returned is located in this District.

## BACKGROUND

### Allstate's Business and Hiring of Independent Agents and Service Providers

14.     Allstate is one of the nation's leading providers of insurance products to individuals and businesses.  Among other things, Allstate provides automobile insurance and property and casualty insurance to individuals and businesses.

15.     In addition to providing these products directly, Allstate appoints independent exclusive agents ("Exclusive Agents"), through its Exclusive Agency Program, to sell Allstate products.

16.    Allstate rigorously screens its Exclusive Agents to ensure that the agents are qualified to represent and sell Allstate products, have the proper tools and facilities to analyze and meet customer needs, and can furnish customers with appropriate insurance solutions.

17.    Allstate Exclusive Agents are authorized to employ "Licensed Service Providers" ("Service Providers") to assist the Exclusive Agents in performing their services under their respective agreements with Allstate.

18.    Allstate expends substantial resources advertising, marketing, and promoting its products.

19.    The Exclusive Agents and their Service Providers benefit directly and indirectly from Allstate's advertising, marketing and promotional efforts, as well as from Allstate's goodwill, reputation and name recognition.  These efforts and expenditures allow the Exclusive Agents and their Service Providers to develop and cultivate customer accounts and relationships on behalf of Allstate.

20.    Allstate relies heavily upon repeat business and renewal of policies to maintain its competitive advantage in the highly competitive insurance industry.  Maintaining goodwill and a solid business reputation with its customers and insureds is a critical component of Allstate's success.  Indeed, because Allstate's business is a service business, the relationship that each Exclusive Agent and its Service Provider has with Allstate customers is highly dependent on the attention and excellent service given to the customers on an ongoing basis, and the continued trust the customers place in Allstate as a leading provider of such services.

**Protection of Allstate Confidential Information**

21.    Allstate customers entrust Allstate and its Exclusive Agents and the Exclusive Agents' Service Providers to safeguard and protect their information, which includes information

relating to, among other things, their contact information, types of policies, amount of insurance, premium amounts, description and location of assets and property, claims histories, insurance needs, pricing information, and other insurance coverage information, from unauthorized use or disclosure.

22.     Allstate protects its information (described in the paragraph above) by, among other things: limiting the disclosure and use of this information to only the Exclusive Agent and the Exclusive Agent's Service Providers who need this information to sell Allstate products; educating the Exclusive Agents and the Exclusive Agents' Service Providers about the requirement and necessity of keeping this information confidential; restricting access to this information by limiting access to computer networks and requiring the use of passwords to access the information; and, as discussed above, requiring the Exclusive Agents and the Exclusive Agents' Service Providers to execute written agreements that protect against the misuse and improper disclosure of Allstate Confidential Information. Indeed, Exclusive Agents and the Service Providers do not have access to Allstate Confidential Information before executing their agreements with Allstate.

23.     Consequently, all Exclusive Agents and Service Providers, pursuant to their agreements with Allstate and while performing services under their agreements, acknowledge that they will have access to Allstate Confidential Information, promise to not disclose Allstate Confidential Information to anyone not authorized to receive it, and confirm that they will not use Allstate Confidential Information for their own benefit or for any improper purpose.

24.     Exclusive Agents and the Service Providers agree, upon termination of their relationship with Allstate, to continue treating Allstate Confidential Information as confidential, not disclose, either directly or indirectly, Allstate Confidential Information to any third party, and immediately return all Allstate Confidential Information to Allstate.

25.    Hence, Allstate's Confidential Information is not available to the general public and is closely guarded by Allstate.  Allstate keeps such information strictly confidential in order to protect its customers' privacy and to maintain a competitive advantage in the highly competitive insurance business.

### Birt Enters into the Agreement to Solicit and Sell Allstate Products

26.    After proceeding through Allstate's rigorous screening process, Birt became an Exclusive Allstate Agent on or about March 1, 2021. (See Agreement, Ex. A).

27.    As an Allstate Exclusive Agent, Birt solicited potential and existing Allstate customers to purchase Allstate products, and service existing Allstate customers' needs, from 2717 Dantzler Drive in North Charleston, South Carolina ("Agency Location").

28.    As explained below, in consideration of Birt's access to existing and potential Allstate customers and Allstate Confidential Information, Birt, pursuant to the Agreement, agreed to protect Allstate Confidential Information and to abide by certain reasonable restrictive covenants.

29.    Under his Agreement, Birt acknowledged that the following information is Allstate "confidential information" and property (referred to herein as "Confidential Information"):

> business plans of [Allstate]; information regarding the names, addresses, and ages of policyholders of [Allstate]; types of policies; amounts of insurance; premium amounts; the description and location of insured property; the expiration or renewal dates of policies; policyholder listings and any policyholder information subject to any privacy law; claim information; certain information and material identified by [Allstate] as confidential or information considered a trade secret as provided herein or by law; and any information concerning any matters affecting or relating to the pursuits of [Allstate] that is not otherwise lawfully available to the public.

(Ex. A, § IV(D).)

30.    Pursuant to Section IV(D) of the Agreement, Birt agreed that he would not, at any time or in any manner, directly or indirectly, use Allstate Confidential Information for any purpose other than to carry out the provisions of the Agreement. (Ex. A, § IV(D).)

31.    Pursuant to Sections IV(D) and XVIII(B) of the Agreement, Birt acknowledged that all Confidential Information he was provided and had access to as an Allstate Exclusive Agent would at all times remain Allstate property and was to be returned to Allstate upon termination of the Agreement and his relationship with Allstate. (Ex. A, §§ IV(D), XVIII(B).)

32.    Pursuant to Section XVIII(D)(1-3) of the Agreement, Birt agreed that, for a period of one year following termination of the Agreement, he would not solicit the purchase of products competitive with those sold by Allstate:

- With respect to any person, company, or organization to whom [Birt] or anyone acting on [Birt's] behalf sold insurance or other products or services on behalf of [Allstate] and who is a customer of [Allstate] at the time of termination of the Agreement;

- With respect to any person, company, or organization who is a customer of [Allstate] at the time of termination of this Agreement and whose identity was discovered as a result of [Birt's] status as a[n Allstate] agent or as a result of [Birt's] access to [Allstate] Confidential Information[1]; or

- From any office or business site located within one mile of [Birt's Agency Location] at the time the Agreement is terminated.

(Ex. A, § XVIII D(1-3).)

33.    Birt recognized that a breach of any of the provisions in his Agreement would "cause irreparable damage to [Allstate's] business and that such damage will be difficult or impossible to measure." (Ex. A, §§ IV(F), XVIII(F).)

---

[1] The Allstate customers identified in paragraph 32 are collectively referred to as "Allstate customers."

34. Accordingly, Birt agreed that if he breached any of the obligations under the Agreement, then Allstate would be "entitled to an order granting injunctive relief from any court of competent jurisdiction," in addition to other rights and remedies. (*Id.*)

35. Birt also agreed that Allstate would be "entitled to an award of reasonable attorneys' fees in the event that [Allstate] is successful in an application for injunctive relief or in an action based upon the breach" of any of the terms set forth in the Agreement. (*Id.*)

**Houser Enters into the Agreement to Solicit and Sell Allstate Products**

36. On or about January 20, 2021, Houser became a Service Provider by executing the Agreement. (See Ex. B).

37. As a Service Provider, Houser solicited potential and existing Allstate customers to purchase Allstate products, and service existing Allstate customers' needs, from 2717 Dantzler Drive in North Charleston, South Carolina (i.e. the Agency Location).

38. As explained below, in consideration of Houser's access to existing and potential Allstate customers and Allstate Confidential Information, Houser, pursuant to her Agreement, agreed to protect Allstate Confidential Information and to abide by certain reasonable restrictive covenants.

39. Under her Agreement, Houser acknowledged that the following information is Allstate "confidential information" and property (referred to herein as "Confidential Information"):

> business plans of [Allstate]; information regarding the names, addresses, and ages of policyholders or prospective policyholders of [Allstate]; types of policies; amounts of insurance; premium amounts; the description and location of insured property; the expiration or renewal dates of policies; policyholder listings and any policyholder information subject to any privacy law; claim information; certain information and material identified by [Allstate] as confidential or information considered a trade secret as provided herein or by law; and any information concerning any matters affecting or

relating to the pursuits of [Allstate] that is not otherwise lawfully available
to the public.

(Ex. B, § 3.)

40.    Pursuant to Section 4 of the Agreement, Houser agreed that she will not, at any time
or in any manner, directly or indirectly, use any Allstate Confidential Information other than "for
the purposes of assisting [Birt] in performing services under the [Agreement]." (Ex. B, § 4.)

41.    Houser further acknowledged, pursuant to Sections 5 and 6 of the Agreement,
that all Confidential Information she was provided and had access to as a Service Provider would
at all times remain Allstate property and was to be returned to Allstate upon termination of her
employment with EA Birt.  (Ex. B, §§ 5, 6.)

42.    In addition to the restrictions protecting Allstate Confidential Information, Houser
agreed that, for one year following the termination of his employment with Allstate, she would not
solicit the purchase of products in competition with those sold by Allstate: a) with respect to any
Allstate customer known by Houser through her employment with Birt, b) to any Allstate customer
known by Houser as a result of her access to Allstate Confidential Information, and/or c) from any
office or business site located within one mile of the Agency Location. (Ex. B, § 7.)

43.    Houser recognized that a breach of any of the provisions in his Agreement would
"cause irreparable damage to [Allstate's] business and that such damage will be difficult or
impossible to measure."  (Ex. B, § 10.)

44.    Accordingly, Houser agreed that if she breached any of the obligations under the
Agreement, then Allstate would be "entitled to an order granting injunctive relief from any court
of competent jurisdiction," in addition to other rights and remedies.  (*Id.*)

45.     Houser also agreed that Allstate would be "entitled to an award of reasonable attorneys' fees in the event that [Allstate] is successful in an application for injunctive relief or in an action based upon the breach" of any of the terms set forth in the Agreement.  (Ex. B, § 11.)

**Birt and Houser Breach Their Agreements With Allstate**

46.     Pursuant to their Agreements, Birt and Houser agreed that, after their relationship with Allstate terminated, they would: (a) immediately return all Allstate Confidential Information to Allstate; (b) not solicit Allstate customers for one year; and (c) not solicit the sale of products that compete with Allstate from any location that is within one mile of the Agency Location for one year.

47.     Birt's Agreement and his relationship with Allstate terminated on January 13, 2024.

48.     As a result, Birt was required to return all Allstate Confidential Information to Allstate by January 13, 2024.

49.     Naturally, he was also prohibited from using, possessing, or accessing Allstate Confidential Information after January 13, 2024.

50.     Similarly, Birt is prohibited from soliciting Allstate customers or working for a competing insurance agency within one mile of the Agency Location until after January 13, 2025.

51.     Unfortunately, Birt is ignoring his post-termination obligations in several different ways.

52.     First and based upon information and belief, Birt retained Allstate Confidential Information after January 13, 2024.

53.     Based upon information and belief, Birt retained Allstate Confidential Information in order to use the information to solicit Allstate customers on behalf of himself and Houser.

54.     Second, Birt is selling products that compete with Allstate products out of the Agency Location.

55.     Indeed, as demonstrated by the attached photographs, Birt has opened, and is operating, the "Charles Birt Agency" out of the Agency Location.  In doing so and as is depicted in the attached photographs, Birt is selling Automobile insurance, Homeowners insurance, Life Insurance, and Business Insurance. (The photographs are attached as Exhibits C and D)

56.     Birt sold Automobile insurance, Homeowners insurance, Life Insurance, and Business Insurance on behalf of Allstate and out of the Agency Location when Birt was an Allstate Exclusive Agent.

57.     As such, and as stated above, Birt is selling products and services that compete with Allstate products and services out of the Agency Location.

58.     Houser's Agreement and her relationship with Allstate terminated on January 31, 2024.

59.     As a result, Houser was required to return all Allstate Confidential Information to Allstate by January 31, 2024.

60.     Naturally, she was also prohibited from using, possessing, or accessing Allstate Confidential Information after January 31, 2024.

61.     Similarly, Houser is prohibited from soliciting Allstate customers or working for a competing insurance agency within one mile of the Agency Location until after January 31, 2025.

62.     Unfortunately, like Birt, Houser is also ignoring her post-termination obligations in several different ways.

63.     First and based upon information and belief, Houser retained Allstate Confidential Information after January 31, 2024.

64. Based upon information and belief, Houser retained Allstate Confidential Information in order to use the information to solicit Allstate customers on behalf of herself and Birt.

65. Second, Houser is selling products that compete with Allstate products out of the Agency Location.

66. Indeed, as demonstrated by the attached photographs, Houser is selling Automobile insurance, Homeowners insurance, Life Insurance, and Business Insurance out of the Agency Location. (See Exs. C and D)

67. Houser sold Automobile insurance, Homeowners insurance, Life Insurance, and Business Insurance on behalf of Allstate and out of the Agency Location when she was an LSP.

68. As such, and as stated above, Houser is selling products and services that compete with Allstate products and services out of the Agency Location.

69. On September 23, 2024, Allstate served Birt and Houser each with letters demanding that they cease and desist from soliciting competitive insurance products to those offered by Allstate from within one mile of the Agency Location and immediately stop using and return any Allstate Confidential Information in their possession, custody or control. (A copy of Allstate's September 23, 2024 letters are attached as Exhibits E and F)

70. Unfortunately, and at this time, Birt and Houser refuse to stop selling products that compete with Allstate from the Agency Location.

71. Birt and Houser also refuse to return Allstate Confidential Information to Allstate.

72. Hence, Birt and Houser are ignoring the duties and obligation they owe Allstate under the Agreement. They are also ignoring the duties and obligations they owe Allstate under the law.

**Irreparable Harm to Allstate**

73.     Birt and Houser are harming Allstate's legitimate business interests, including its goodwill and customer relationships, by offering insurance products competitive to those offered by Allstate from a location within one mile of the Agency Location.

74.     In fact, Birt's and Houser's new location is the Agency Location.  Hence, many existing Allstate customers who were serviced by or communicated with Birt and Houser may pass directly by the Agency Location and see Birt and Houser.  Birt and Houser can then solicit the customers to leave Allstate and purchase competitive products from Birt and Houser,

75.     Furthermore, Birt and Houser are still in possession of Allstate Confidential Information and the only reason for Birt or Houser to possess Allstate Confidential Information is to use Allstate Confidential Information on behalf of themselves.

76.     Consequently, it is both probable and imminent that an existing or prospective customer may purchase insurance products from Birt and Houser instead of from Allstate.

77.     It is also both probable and imminent that Allstate's Confidential Information is at significant risk and exposure.

78.     Injury to Allstate is therefore both probable and imminent because Birt and Houser clearly intend to continue violating their Agreements and using Allstate Confidential Information.

79.     Accordingly, Allstate is suffering irreparable harm and injunctive relief is necessary and appropriate to prevent further damage to Allstate.

**COUNT I**
**(Breach of Contract Against Birt)**

80.     Allstate repeats and realleges each and every allegation contained in paragraphs 1 through 79 of the Complaint, as if fully set forth herein.

81.     On March 1, 2021, Birt entered into his Agreement with Allstate.

82.     The Agreement is a valid and enforceable contract.

83.     Under the Agreement, Birt promised, for a period of one year following the termination of the Agreement, to not solicit the purchase of products competitive with those sold by Allstate from any location within one mile of the Agency Location.

84.     Under the Agreement, Birt promised, upon termination of the Agreement, to immediately return all Allstate Confidential Information and property to Allstate.

85.     Under the Agreement, Birt further promised to not use Allstate Confidential Information for any purpose other than carrying out the provisions of the Agreement.

86.     The post-termination covenants found in the Agreement are reasonable in scope and duration and are necessary to protect Allstate's legitimate business interests in its Confidential Information, goodwill, and longstanding customer relationships.

87.     Allstate has performed all of the duties and obligations it owes Birt under the Agreement.

88.     Birt breached the Agreement, and continues to breach the Agreement, by, among other things, soliciting the purchase of competing insurance products from the Agency location.

89.     Birt breached the Agreement, and continues to breach the Agreement, by, among other things, retaining and using Allstate Confidential Information.

90.     Allstate has incurred significant damage as a result of Birt's breach of the Agreement.  Birt's illegal solicitations and actions damaged and are continuing to damage Allstate's goodwill and customer relationships.  Allstate's damages are in excess of $75,000.00.

91.     Moreover, Birt's breaches of the Agreement are continuing.  Allstate is therefore subject to continuing irreparable harm, economic injury, and damage to its goodwill and customer relationships.

92.     Allstate has no adequate remedy at law and, unless injunctive relief is granted, Allstate will continue to be irreparably harmed by Birt's breach of his Agreement in a manner that is not fully compensable by money damages.

93.     Allstate therefore requests that this Court grant injunctive relief against Birt that prohibits Birt from soliciting the purchase of insurance products that compete with Allstate from within one mile of the Agency Location and using, accessing, or possessing Allstate Confidential Information.

94.     Allstate further requests that this Court order Birt to immediately return all Allstate property in the custody, possession, or control of Birt, including Allstate Confidential Information, to Allstate.

95.     Finally, Allstate is entitled to recover the attorneys' fees and costs Allstate incurs as a result of Birt's breaches of the Agreement.

## COUNT II
### (Breach of Contract Against Houser)

96.     Allstate repeats and realleges each and every allegation contained in paragraphs 1 through 95 of the Complaint, as if fully set forth herein.

97.     On January 20, 2021, Houser entered into her Agreement with Allstate.

98.     The Agreement is a valid and enforceable contract.

99.     Under the Agreement, Houser promised, for a period of one year following the termination of the Agreement, to not solicit the purchase of products competitive with those sold by Allstate from any location within one mile of the Agency Location.

100.     Under the Agreement, Houser promised, upon termination of the Agreement, to immediately return all Allstate Confidential Information and property to Allstate.

101.     Under the Agreement, Houser further promised to not use Allstate Confidential Information for any purpose other than carrying out the provisions of the Agreement.

102.     The post-termination covenants found in the Agreement are reasonable in scope and duration and are necessary to protect Allstate's legitimate business interests in its Confidential Information, goodwill, and longstanding customer relationships.

103.     Allstate has performed all of the duties and obligations it owes Houser under the Agreement.

104.     Houser breached the Agreement, and continues to breach the Agreement, by, among other things, soliciting the purchase of competing insurance products from the Agency Location.

105.     Houser breached the Agreement, and continues to breach the Agreement, by, among other things, retaining and using Allstate Confidential Information.

106.     Allstate has incurred significant damage as a result of Houser's breach of the Agreement.  Houser's illegal solicitations and actions damaged and are continuing to damage Allstate's goodwill and customer relationships.  Allstate's damages are in excess of $75,000.00.

107.     Moreover, Houser's breaches of the Agreement are continuing.  Allstate is therefore subject to continuing irreparable harm, economic injury, and damage to its goodwill and customer relationships.

108.     Allstate has no adequate remedy at law and, unless injunctive relief is granted, Allstate will continue to be irreparably harmed by Houser's breach of her Agreement in a manner that is not fully compensable by money damages.

109.     Allstate therefore requests that this Court grant injunctive relief against Houser that prohibits Houser from soliciting the purchase of insurance products that compete with Allstate

from within one mile of the Agency Location and using, accessing, or possessing Allstate Confidential Information.

110.     Allstate further requests that this Court order Houser to immediately return all Allstate property in the custody, possession, or control of Houser, including Allstate Confidential Information, to Allstate.

111.     Finally, Allstate is entitled to recover the attorneys' fees and costs Allstate incurs as a result of Houser's breaches of the Agreement.

<u>**COUNT III**</u>
**(Violation of South Carolina Trade Secrets Act – Against All Defendants)**

112.     Allstate repeats and re-alleges each and every allegation contained in paragraphs 1 through 111 of the Complaint, as if fully set forth herein.

113.     During the course of their relationship with Allstate, Birt and Houser were exposed to substantial amounts of Allstate Confidential Information.

114.     For instance, Birt and Houser had access to: Allstate business plans; information regarding the names, addresses, and ages of policyholders or prospective policyholders of Allstate; types of policies; amounts of insurance; premium amounts; the description and location of insured property; the expiration or renewal dates of policies; policyholder listings; policyholder information that is subject to privacy law; and claim information.

115.     The Confidential Information identified in paragraphs 21, 29, 39, and 114 is not available to the general public and is closely guarded by Allstate. Allstate keeps such information strictly confidential in order to maintain an advantage in the highly competitive insurance business.

116.     This information is considered a trade secret under the South Carolina Trade Secrets Act ("STSA"), S.C. § 39-8-10 *et seq*., because Allstate derives independent economic value from this information not being generally known to the public, the information is not readily

ascertainable by proper means by persons who could obtain economic value from its disclosure or use, and the information is the subject of reasonable efforts to maintain its secrecy.

117.     The economic value of the Allstate trade secrets/Confidential Information that Birt and Houser had access to under their Agreements is over $500,000.

118.     Under the STSA, "actual or threatened misappropriation [of trade secrets] may be enjoined." *Id.*

119.     Birt and Houser are misappropriating Allstate trade secrets by refusing to return Allstate property, including Allstate Confidential Information, and using that information to solicit Allstate customers.

120.     Birt's and Houser's refusal to return Allstate property, including Allstate Confidential Information, constitutes the "threatened" misuse of Allstate trade secrets and injunctive relief is therefore appropriate.

121.     Accordingly, Allstate requests that this Court enter an order enjoining Birt and Houser from using any Allstate Confidential Information, and from disclosing Allstate Confidential Information to anyone not authorized to receive the Confidential Information.

122.     Allstate also requests that this Court enter an order requiring Birt and Houser to return any and all Allstate Confidential Information to Allstate, as they are required to do pursuant to the Agreement and the STSA.

123.     In addition, Birt's and Houser's actions have damaged Allstate's goodwill, reputation, and legitimate business interests.

124.     Allstate therefore requests an award of compensatory damages, exemplary damages, and reasonable attorneys' fees as a result of Birt's and Houser's willful and malicious misappropriation of Allstate trade secrets.

125.    Finally, Birt's and Houser's misappropriation of Allstate's trade secrets was willful and malicious.

126.    Allstate therefore requests an award of compensatory damages, exemplary damages, and reasonable attorneys' fees as a result of Birt's and Houser's willful and malicious misappropriation of Allstate trade secrets.

**<u>Count IV</u>**
**(Violation of Federal Defend Trade Secrets Act Against All Defendants)**

127.    Allstate repeats and realleges paragraphs 1 through 126 of the Complaint, as if fully set forth herein.

128.    During the course of his relationship with Allstate, Birt and Houser were provided access to substantial amounts of Allstate Confidential Information, including the Confidential Information identified in paragraphs 21, 29, 39, and 114.

129.    Allstate Confidential Information is not available to the general public and is closely guarded by Allstate. Allstate keeps such information strictly confidential in order to maintain a competitive advantage over competitors.

130.    Allstate Confidential Information is considered a trade secret under the Defend Trade Secrets Act, 18 U.S.C. § 1833, *et seq.* ("DTSA"), because the information is not generally known outside of Allstate's business, the information is not generally known by employees and others involved in Allstate's business, Allstate has taken reasonable measures to guard the secrecy of the information, the information is of great value to Allstate and its competitors, Allstate invested significant amounts of time and money in developing the information, the information cannot easily be acquired or duplicated by others, and because Allstate continuously uses the information in its business.

131.    Birt and Houser have contractual obligations to return Allstate Confidential Information to Allstate immediately upon termination of their Agreements.

132.    Birt and Houser, however, ignored (and continue to ignore) their contractual obligations by maintaining possession of Allstate Confidential Information, using the Confidential Information to unfairly compete with Allstate, and passing the Confidential Information along to third parties who are not authorized to receive, possess, or access Allstate Confidential Information.

133.    Unless restrained, Birt and Houser will continue to use, divulge, disclose, acquire and/or otherwise misappropriate Allstate Confidential Information.

134.    Furthermore, actual or threatened misappropriation of Confidential Information may be enjoined under the DTSA.

135.    It is axiomatic that if Birt and Houser are actively using Allstate Confidential Information and ignoring the terms of the Agreement, then Birt and Houser have no intention of complying with the DTSA.

136.    Consequently, Birt's and Houser's actions constitute the actual and/or threatened misuse of Allstate Confidential Information.  Injunctive relief against Birt and Houser is therefore appropriate.

137.    Naturally then, Allstate requests an order enjoining Birt and Houser from using Allstate Confidential Information and from disclosing Allstate Confidential Information to anyone not authorized to receive the Confidential Information.

138.    Allstate further requests an order requiring Birt and Houser to return any and all Allstate Confidential Information to Allstate.

139.    Finally, Birt's and Houser's misappropriation of Allstate Confidential Information has been willful and malicious, and Allstate has incurred significant damages as a result of Birt's and Houser's misappropriation.

140.    Birt's and Houser's actions have also damaged Allstate's good will, reputation, and legitimate business interests.

141.    Allstate is therefore entitled to recover not only compensatory damages, but also punitive damages and attorneys' fees resulting from Birt's and Houser's wrongful misappropriation of Allstate confidential information.

142.    Allstate demands trial by jury.

**WHEREFORE**, Plaintiff Allstate Insurance Company respectfully requests that this Court:

1.    Enter an injunction enjoining and restraining Birt and Houser, and their agents, representatives, associates, employees, and all those acting in concert or participation with them, from:

      (a)    soliciting the purchase of insurance products competitive with those offered by Allstate from within one mile of 2717 Dantzler Drive in North Charleston, South Carolina; and

      (b)    using, accessing and/or possessing Allstate Confidential Information.

2.    Enter an order requiring Birt and Houser to return all Allstate Confidential Information and property in their possession, custody or control to Allstate;

3.    Enter judgment against Birt and Houser for compensatory damages in an amount to be determined at trial;

4.      Award Allstate the costs and expenses, including reasonable attorneys' fees, Allstate incurs as a result of Birt's and Houser's breaches of their Agreements;

5.      Award Allstate the costs and expenses, including reasonable attorneys' fees, Allstate incurs as a result of Birt's and Houser's intentional, willful and wanton violation of the South Carolina and Federal Defend Trade Secrets Act;

6.      Award Allstate punitive damages resulting from Birt's and Houser's intentional, willful and wanton violation of the South Carolina and Federal Defend Trade Secrets Act; and

7.      Award Allstate such other relief as the Court may deem just and proper.

Dated:  December 4, 2024

Respectfully submitted,

<u>CLEMENT RIVERS, LLP</u>

<u>By:  *s/Duke R. Highfield*</u>
<u>Duke R. Highfield, Fed ID 5654</u>
<u>Zachery Kern, Fed ID 13078</u>
<u>25 Calhoun Street, Suite 400</u>
<u>Charleston, SC</u>
<u>(843) 720-5456</u>
<u>dhighfield@ycrlaw.com</u>
<u>zkern@ycrlaw.com</u>

<u>BENESCH FRIEDLANDER COPLAN & ARO</u>
<u>NOFF LLP</u>

J. Scott Humphrey (pro hac vice forthcoming)
Jaquan Williams (pro hac vice forthcoming)
Benesch, Friedlander, Coplan & Aronoff LLP
71 South Wacker Drive, Suite 1600
Chicago, Illinois 60606-4637
Telephone:  312.212.4949
Facsimile:  312.767.9192
Email:  shumphrey@beneschlaw.com
          jawilliams@beneschlaw.com

*Attorneys for Plaintiff Allstate Insurance*
*Company*

## **CERTIFICATE OF SERVICE**

I certify that on this 4th day of December 2024, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing, and attach same for service on the following:

Charles Birt
2873 Rutherford Way
Charleston, South Carolina.

Courtany Houser
8242 Savannah Highway
Adams Run, South Carolina.

*s/ J. Scott Humphrey* _____
J. Scott Humphrey

*Attorney for Plaintiff Allstate*
*Insurance Company*